In the Matter of Bar Admission of: Edward Morgan Craig.

Supreme Court

*No. 94–2378–BA. Submitted on briefs January 12, 1995.—Decided February 9, 1995.*

(Also reported in 526 N.W.2d 261.)

For Edward Morgan Craig there was a brief by *Richard J. Cayo* and *Halling & Cayo, S.C.,* Milwaukee.

For the Board of Bar Examiners there was a brief by *Thomas L. Dosch,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

PER CURIAM.  *Review of Board of Bar Examiners' determination; determination affirmed.*

This is a review pursuant to SCR 40.08(5)[1] of the determination of the Board of Bar Examiners (Board) declining to certify that Edward Morgan Craig has the requisite good moral character and fitness to practice law to entitle him to bar admission. The Board found that Mr. Craig, while employed at a law firm as a law clerk awaiting bar admission following his successful completion of the Wisconsin bar examination, identified himself as an attorney to a court and to other attorneys on several occasions and as attorney of

---

[1] SCR 40.08 provides:

**Adverse determination.**

. . .

(5)  A petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which written notice thereof was mailed to the applicant.

495

record in a court hearing, that in response to an inquiry from the Board of Bar Examiners he denied under oath that he had ever made an appearance of record in a court hearing and that he sent three *ex parte* letters to the court after being warned against such contacts. When it reported its findings, conclusions and determination to Mr. Craig, the Board stated that he would be eligible to reapply for bar admission no earlier than July 6, 1995—one year from the date of the Board's adverse determination—and upon his application and payment of the admission fee, the Board would investigate and evaluate his application.

The Board properly determined that Mr. Craig had failed to establish the requisite character and fitness to practice law and we affirm that determination. We do not, however, affirm the Board's decision to prohibit Mr. Craig from reapplying for bar admission for a specified period, as that decision exceeded the Board's authority established by the court's bar admission rules. While SCR 40.06[2] authorizes the Board to

---

[2] SCR 40.06 provides, in part:

**Requirement as to character and fitness to practice law.**
    (1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

    . . .
    (3) An applicant for admission pursuant to SCR 40.04 or SCR 40.05 shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false

decline to certify the character and fitness of a bar admission applicant, it is for this court, not the Board, to determine when and under what circumstances an ineligible applicant may reapply for bar admission. In this case, we determine that Mr. Craig may again apply for bar admission on or after July 6, 1995.

In this review, although stating that he disputed a number of the Board's factual findings as well as all of its legal conclusions, Mr. Craig elected not to contest either those facts or conclusions but sought only a reduction of the time period during which he would be prohibited from reapplying for bar admission. Accordingly, for purposes of this review, the facts found by the Board are deemed admitted by Mr. Craig.

Mr. Craig, who had graduated from Indiana University—Indianapolis School of Law in 1986 and was admitted to the Ohio bar in 1986 and the Kentucky bar in 1988, moved to Wisconsin in 1993 and successfully wrote the bar examination in July. While his admission application remained pending, he worked as a law clerk in the law office of his uncle, Attorney James Ebbeson, in Sturgeon Bay, working under Attorney Ebbeson's direct supervision. In the course of that employment, Mr. Craig became involved in a criminal case involving animal abuse.

On August 3, 1993, while one of the abuse charges was pending, Mr. Craig brought to the Calumet county court for filing an application by Attorney Ebbeson for a John Doe proceeding, together with a request for substitution of judge and for the appointment of a district attorney *pro tempore*. The judge immediately

---

statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

. . .

scheduled a proceeding in chambers and soon thereafter entered a secrecy order and adjourned the matter until September 15, 1993.

Two days later, Attorney Ebbeson filed a notice and claim against the county on behalf of several organizations seeking reimbursement of expenses they incurred in caring for animals the county had impounded and placed with them. The criminal charges that had been filed against the defendant were dismissed the following day and the impounded animals were ordered to be returned to him but most of the animal shelters did not comply with that order and continued to care for the animals. On August 25, 1993, Attorney Ebbeson filed a declaratory judgment action claiming that when the animals were placed, his client and the other shelters were required to sign an unenforceable contract for their care.

The Board learned that Mr. Craig had introduced himself as Attorney Edward Craig with the Ebbeson law office during his first telephone conversation with county corporation counsel in June, 1993 concerning the criminal proceeding and again when the two met in person. Upon additional inquiry, the Board learned from the judge that Mr. Craig had written him two letters in connection with the criminal proceeding but did not provide copies of that correspondence to opposing counsel.

On August 26, 1993, Mr. Craig wrote to the clerk of the court concerning her apparent conclusion that his application for a hearing for the return of seized property was defective. In that letter he stated, "In a very real sense we are both officers of the court, you and I, and so I am hopeful that we can cooperate better in the future on this matter." During a telephonic court hearing on September 1, 1993 with the judge, an attorney

representing a defendant in the declaratory judgment action, the attorney for the criminal defendant and Attorney Ebbeson, Mr. Craig twice introduced himself to the court as Attorney Edward Craig, although he was not licensed to practice law in Wisconsin. In the second of those introductions, he identified himself as "Attorney Edward Craig on behalf of [specified clients]," adding, "We are the moving party, Your Honor." The Board found that Mr. Craig made an appearance on behalf of a party in that telephonic hearing.

When the Board notified Mr. Craig on September 3, 1993 that he had passed the bar exam and that its investigation was pending in respect to his character and fitness qualifications, it asked him to explain his participation in the criminal case, addressing in particular whether he had conveyed an impression to others that he was licensed to practice law in Wisconsin. On September 7, 1993, Mr. Craig submitted an amendment to his admission application in which he stated under oath that his participation in the matter was limited to ministerial work, all performed under Attorney Ebbeson's supervision, and that when he spoke with anyone for the first time in connection with the matter, he identified himself as Attorney Ebbeson's employee and explained that he was not yet licensed to practice law in Wisconsin. In response to the Board's specific question concerning pleadings and court appearances in the criminal matter, Mr. Craig stated under oath that he did not sign pleadings or make court appearances.

In respect to *ex parte* communications, Mr. Craig sent a letter to the judge on August 13, 1993, asking whether the court intended to hold a hearing to determine possessory rights to the impounded animals but he did not send a copy of that correspondence to other

counsel in the matter. The judge then wrote to Attorney Ebbeson stating, in part, "In the future I trust you will not engage in *ex parte* communications with the judge." In that letter, the judge pointed out that Attorney Ebbeson was aware the judge had asked the district attorney to attend the John Doe proceeding Attorney Ebbeson had commenced and that Mr. Craig was present at the initial proceeding when the judge ordered the district attorney to attend any other proceedings scheduled in the matter.

On August 25, 1993, Mr. Craig sent the clerk of court a request that a hearing be scheduled on the possessory rights to the animals, making explicit reference to the underlying criminal case. Although he sent a copy of that letter to the county sheriff asking him to refrain temporarily from taking action regarding the animals, Mr. Craig did not send a copy to the district attorney or to the defendant's attorney. The following day, Mr. Craig wrote to the clerk of court about the application for hearing in the criminal case and failed to provide a copy of his letter to the district attorney or to the defendant's attorney. Mr. Craig wrote again to the clerk of court confirming what the clerk had told him regarding his application for a hearing but did not send a copy of that letter to other counsel of record.

In this review, Mr. Craig asserted that any impression his conduct may have created that he was licensed to practice law in Wisconsin was inadvertent and not intended to mislead. He also contended that his conduct did not prejudice any party or produce any advantage for him and that no one was harmed by it. He made a similar contention in respect to his failure to copy other counsel on his correspondence with the court and its clerk. Mr. Craig took the position that his conduct, as found by the Board, does not warrant the

sanction the Board imposed, namely, his ineligibility to reapply for bar admission for one year from the date of the Board's adverse determination.

It is within the court's discretion to determine whether and when a bar admission applicant who has been denied certification of character and fitness by the Board may reapply and under what circumstances that applicant would be admitted to the bar. *Matter of Bar Admission of Gaylord,* 155 Wis. 2d 816, 828, 456 N.W.2d 590 (1990). We determine that the appropriate response to the seriousness of Mr. Craig's conduct considered in this proceeding is a period of ineligibility for reapplying for bar admission and that the period be one year from the date of the Board's decision declining to certify his character and fitness to practice law. In making that determination, we are guided by our decision in *Gaylord, supra,* in which we determined that a bar applicant's discrepancies in reporting on her bar admission application certain criminal and traffic offenses and her omission of some of them did not constitute conduct so serious as to prohibit the applicant from ever being admitted to the bar. In *Gaylord,* we permitted the applicant to reapply for bar admission after a period of one year from the date of the court's order in the review proceeding.

*By the Court.*—The determination of the Board of Bar Examiners is affirmed.